UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISON

BRYAN BEVAN,

    Plaintiff,

vs.

CASE NO.:

3:17-cv-1304-J-20JRK

PROCOLLECT, INC.,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, BRYAN BEVAN., by and through undersigned counsel, hereby sues the Defendant, PROCOLLECT, INC., and in support thereof respectfully, alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like PROCOLLECT, INC., from invading American citizens' privacy and prevent abusive "robo-calls."

3. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *See Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012).

4. "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up on in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *See Mims* at 752 (*quoting* 137 Cong. Rec. 30, 821 (1991)). Senator Hollings

1

"presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

8. Venue is proper in this District because the Plaintiff resides in this District (Duval County, Florida), the phone calls were received in this District and the Defendant transacts business in Duval County, Florida.

## FACTUAL ALLEGATIONS

9. Plaintiff BRYAN BEVAN is a natural person, and citizen of the State of Florida, residing in Duval County, Florida, and resides in this District.

10. Plaintiff BRYAN BEVAN is a "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

11. Defendant, PROCOLLECT, INC., is a corporation which was formed in Texas with its principal place of business at 12170 N. Abrams Rd, Suite 100, Dallas, TX 75243 and conducts business in the State of Florida.

12. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, in Duval County, Florida, by the Defendant's placing of illegal calls to Duval County, Florida.

13. Defendant, at all material times, was attempting to collect on a residential lease debt entered into by Plaintiff, BRYAN BEVAN (hereinafter the "subject account"), which was originally claimed by COMMONWEALTH OF JACKSONVILLE CH LLC d/b/a "The District on Kernan," an apartment complex in Jacksonville, Florida, but was then moved into collections to Defendant.

14. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calls to Bryan Bevan's cell phone.

15. Defendant called this number multiple times, despite *clear* requests from the Plaintiff to stop calling, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject and parents accounts.

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone numbers were made using an "automatic telephone dialing system"

which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C.§ 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that there was a pause before a live person came on the line.

17. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone numbers was done after he had revoked consent *multiple times* and without the "prior expressed consent" of the Plaintiff.

18. Plaintiff BRYAN BEVAN is the regular user and carrier of the cellular telephone numbers 1-904-482-9117 and 1-904-235-2652 and was a called party and recipient of Defendant's autodialer calls.

19. Defendant used an autodialer and called Plaintiff on his cell phone every day for an extended period of time, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

20. The autodialer calls from Defendant came from multiple telephone numbers, including 1-214-382-4871 and 1-214-341-7788.

21. Beginning in November 2016, Plaintiff Bevan told a representative from Defendant that he revoked consent or otherwise wanted the calls to stop.

22. On November 28, 2016, Plaintiff called Defendant and spoke with an agent of Defendant who <u>specifically stated</u> that Plaintiff's cell phone number had been on the *autodialer list*. Plaintiff again revoked consent for autodialer calls.

23. On that same November 28, 2016 call, <u>Defendant's agent admitted that Plaintiff revoked consent to call</u> by stating that they had removed his number from the autodialer list.

24. Despite this acknowledgement, however, the calls to his cell phone continued through January 2017. Please see **Exhibit A, screen shots from Plaintiff's cell phone, attached.** And Plaintiff continued to call Defendant's representatives to revoke consent.

25. Despite Plaintiff instructing the Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond, when Plaintiff first advised Defendant to stop calling him.

27. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individuals, like Plaintiff, advising Defendant to stop calling.

28. Defendant's corporate policy provided no means for the Plaintiff to have his cellular number removed from the call list or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

29. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

30. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call people who have revoked consent to be called.

31. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

32. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephones.

33. Due to Defendant's constant autodialer calls and demands for payment, Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA – BRYAN BEVAN)

34. Plaintiff BRYAN BEVAN re-alleges and incorporates Paragraphs one (1) through thirty-three (33) above as if fully stated herein.

35. None of Defendant's autodialer calls placed to Plaintiff BRYAN BEVAN were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

36. Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent.

37. The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in November 2016, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him, and told Defendant to stop calling him.

38. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff BRYAN BEVAN respectfully demands a trial by jury on all issues so triable and judgment against Defendant, PROCOLLECT, INC., for statutory damages, actual damages, treble damages, punitive damages, costs, interest, and any other such relief the

court may deem just and proper.

## TRIAL BY JURY

39. Plaintiff is entitled to and hereby respectfully demand a trial by jury on all issues so triable.

## SPOILATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence – paper, audio recordings, electronic documents, or data – pertaining to this litigation as required by law.

Dated this 20th day of November, 2017.

**MAX HUNTER STORY, P.A.**

/s/ Max Story
Max Story, Esquire
Florida Bar No. 0527238
Austin J. Griffin, Esquire
Florida Bar No. 117740
328 2ND Avenue North
Jacksonville Beach, Florida 32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff